# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| REGINALD SOUTHALL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO.: 2:24-cv-00082-KD-C |
| | ) |
| ALLSTATE VEHICLE AND | ) Removed from the Circuit Court |
| PROPERTY INSURANCE | ) of Wilcox County, Alabama |
| COMPANY, et al., | ) Civil Action No. 2024-900008 |
| | ) |
| Defendants. | ) |

## ORDER

This case arises from a dispute over the terms of an insurance contract following a fire at Plaintiff Reginald Southall's ("Southall") home. Specifically, this case centers around the amount of the replacement cost benefit under the policy for re-construction of the home.

Allstate removed the case based on diversity jurisdiction. Southall moved to remand for incomplete diversity (Doc. 9), arguing that the joinder of the resident defendants destroys complete diversity. The resident defendants are the insurance agents or agencies that sold the Allstate policy: James Chad Solomon, Gulf Protection Group, Inc., Jonathan Waters, Jonathan Waters Agency, LLC, and

Russell Johnson (the "Agents"). Allstate contends they were fraudulently joined and, therefore, do not disturb this Court's jurisdiction.[1]

A hearing on the motion to remand was held on May 14, 2024. During that hearing Southall agreed there is no fictious party practice in federal court, and he is not basing his motion for remand upon the citizenship of any "fictitious party," nor shall the Court consider same. *See* 28 U.S.C. § 1441(b)(1) ("In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded."); *see also GMFS, L.L.C. v. Bounds*, 275 F. Supp. 2d 1350, 1354 (S.D. Ala. 2003).

After review of the Motion to Remand (Doc. 9), the Response in Opposition (Doc. 11), and the statements and arguments of the parties presented during the hearing, it is determined that the Agents were fraudulently joined and jurisdiction in this Court is proper.[2]

## **FINDINGS OF FACT**

---

[1] The motion to remand was referred for appropriate action pursuant to the Clerk's referral dated April 15, 2024. (See CM/ECF Docket Sheet).

[2] A motion to remand does not address the merits of the case but the appropriate forum. Thus, an order is deemed the appropriate procedural response to a motion to remand as opposed to a report and recommendation. See *Alum Fund, LLC v. Greater Nevada Credit Union*, 2024 WL 2954125, *7, fn. 3 (M.D. Fla. June 12, 2024) (citing *Franklin v. City of Homewood*, 2007 WL 1804411, *3 (N.D. Ala. June 21, 2007). Should Judge DuBose disagree with this assessment, she will have the option of choosing to review this opinion *de novo*.

The following findings of fact are based upon the parties' submissions and statements at oral argument.

1. Plaintiff Reginald Southall ("Southall") purchased an Allstate Vehicle and Property Insurance Company ("Allstate") homeowners policy in 2017 covering his house located at 155 Roger Road, Pine Hill, AL 36769. The policy was renewed annually, and was last renewed on February 10, 2023, shortly before the fire. Complaint, Doc. 1-2, PageID.23; Doc. 1-5, PageID.91-94.

2. On March 25-26, 2023, the insured home completely burned, and Southall subsequently filed a claim under his Allstate policy. Doc. 1-2, PageID.24.

3. Allstate adjusted the loss and paid Southall $247,844, an amount it has determined to be the actual cash value of the house. Doc. 1, PageID.1. Southall was then entitled to apply for an additional replacement cost benefit to be paid in accordance with the policy terms and conditions. Allstate estimated the replacement cost was $358,037. *Id.*, PageID.2. Deducting the actual cash value already paid of $247,844 from the replacement cost leaves a net replacement cost benefit of $110,193. Southall, however, contends he should be paid the full policy limit for the dwelling of $640,722 (or more) to rebuild the house that was there. *See* Complaint, Doc. 1-2, PageID.24.

4. The policy contains the following replacement cost benefit:

> Building Structure Reimbursement will not exceed the smallest of the following amounts:

3

    1)    the replacement costs of the part(s) of the building structure(s) for equivalent construction for similar use on the same residence premises;

    2)    the amount actually and necessarily spent to repair or replace the damaged building structure(s) with equivalent construction for similar use on the same residence premises; or

    3)    the Limit of Liability applicable to the building structure(s) as shown on the Policy Declarations for Dwelling Protection-Coverage A or Other Structures Protection-Coverage B, regardless of the number of building structures and structures other than building structures involved in the loss.

*See* Doc. 1-3, PageID.80.

The replacement cost benefit is arguably the amount required to rebuild for "equivalent construction" the residence that was destroyed.

5. The policy also advised that the actual replacement cost upon loss of the property could be more or less than the policy limits.

6. While the Important Notices (the "Notices") included with the policy estimated that the cost to replace Southall's home was $640,722 (which is also the policy limit), the Notices explained that any loss settlement for the house would be based on the actual replacement cost up to the limits. *See* Doc. 1-5, PageID.92, 95-96. The Notices expressly warned "there is a possibility that your new limits may provide coverage in excess of the actual replacement cost of your home. . . ." *Id.* at PageID.95. The Notices further explained that the policy limits are only an

4

"estimate" of the actual replacement cost following damage or destruction to the insured home:

> [i]t is important to keep in mind that your Coverage A limits reflect a replacement cost that is only an estimate based on data that was available to us when we made this estimate . . . . The actual amount it will cost to replace your home cannot be known until after a covered total loss has occurred. Please keep in mind that we do not guarantee the adequacy of the estimate to cover any future loss(es).

*Id.*

7. The Policy advised Southall that automatic increases in the policy limits were based on increased construction costs in this area, that it was his duty to assess necessary coverage amounts, and that he should contact his agent with any questions:

> **Additional Information About Dwelling Protection Limits**
>
> Your policy includes a feature called "Property Insurance Adjustment" (PIA). PIA reflects changes in construction costs in your area that may have occurred during the policy period.
>
> We would like you to know that your policy's PIA recently indicated that construction costs in your area have increased. Based on this information, we have automatically increased your Dwelling Protection-Coverage A limits.
>
> However, it is ultimately your responsibility to consider whether the changes we have made are sufficient for your insurance needs. It is important for you to understand that these are only estimates and the new limits of your policy may not provide sufficient coverage in the event of a loss. For example, if you have done any remodeling to your home which has not been updated in our records, your home's replacement cost may be higher than our current records indicate. In that case, you may want to increase your limits to reflect such changes. Conversely, there is a possibility that your new limits may provide coverage in excess of the actual replacement cost of your home. For example, if you originally decided to insure your home at an amount that exceeded the estimated replacement cost, you may want to call your Allstate representative to discuss the current value of your home and the possibility of lowering your limits.
>
> If you have any questions about PIA, or your policy in general, please contact your Allstate representative.

*Id.*

8. Southall did not contact Allstate or any of the Agents upon renewal to indicate the policy did not meet his needs.

9. In his Complaint, Southall asserts claims for Civil Conspiracy (Count I), Bad Faith (Count II), Fraud (Count III), Breach of Contract (Count IV), Combined and Concurring Conduct (Count V), Negligent and Wanton Procurement of

Insurance Policy (Count VI), Declaratory Judgment (Count VII), and Fictitious Defendants (Count VIII). *See* Complaint, Doc. 1-2.

## **CONCLUSIONS OF LAW**

### I. **Applicable Legal Standards**

"Any civil case filed in state court may be removed by the defendant to federal court if the case could have been brought originally in federal court." *Tapscott v. MS Dealer Serv. Corp.,* 77 F.3d 1353, 1356 (11th Cir.1996), citing 28 U.S.C. § 1441(a), *abrogated on other grounds Cohen v. Office Depot, Inc.,* 204 F.3d 1069 (11th Cir.2000). Federal courts may exercise diversity jurisdiction over all civil actions where the amount in controversy exceeds $75,000, exclusive of interest and costs, and the action is between citizens of different states. 28 U.S.C. § 1332(a)(1). However, "[b]ecause removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly.... Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court." *University of South Alabama v. American Tobacco Co.,* 168 F.3d 405, 411 (11th Cir.1999).

"Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). "[T]he removing party bears the burden of demonstrating federal jurisdiction." *Triggs* at 1287 n. 4 (citation omitted); *Tapscott, supra* ("A removing defendant has the burden of proving the existence of federal

7

jurisdiction."). Therefore, in this case, the burden is on the removing defendant to establish complete diversity, that is, the plaintiff is diverse from every defendant, *Triggs, supra,* 154 F.3d at 1287 (citation omitted), and, in addition, to establish by a preponderance of the evidence that the amount in controversy more likely than not exceeds the $75,000 jurisdictional requirement,[3] *Tapscott, supra,* 77 F.3d at 1357.

"[W]hen a plaintiff names a non-diverse defendant solely to defeat federal diversity jurisdiction, the district court must ignore the presence of the non-diverse defendant and deny any motion to remand the case to state court." *Kimball v. Better Business Bureau of West Florida*, 613 F. App'x 821, 823 (11th Cir. 2015) (citing *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1332 (11th Cir. 2011)). In other words, "[a] defendant's 'right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy.'" *Tapscott* at 1360 (quoting *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97, 42 S. Ct. 35, 37, 66 L. Ed. 144 (1921)).

Courts determine whether they have jurisdiction over a case "'based upon the plaintiff's pleadings at the time of the removal,' . . . supplemented by any affidavits or deposition transcripts filed by the parties." *Fowler v. Provident Life & Accident Ins. Co.*, 256 F. Supp. 2d 1243, 1246 (N.D. Ala. 2003) (citation omitted).

---

[3] Plaintiff does not dispute that the jurisdictional amount requirement is present in this action. Doc. 9, PageID.65.

## II. Analysis.

Southall alleges eight counts in his Complaint.[4]

### A. Civil Conspiracy (Count I)

To establish a claim for civil conspiracy, a plaintiff must first establish a valid underlying claim. *Goolesby v. Koch Farms, LLC*, 955 So. 2d 422, 430 (Ala. 2006) ("A civil conspiracy cannot exist in the absence of an underlying tort."). "'[L]iability for civil conspiracy rests upon the existence of an underlying wrong and . . . if the underlying wrong provides no cause of action, then neither does the conspiracy.'" *Ex parte Ala. Dep't of Transp.*, 764 So. 2d 1263, 1271 (Ala. 2000) (quoting *Jones v. BP Oil Co.*, 632 So. 2d 435, 439 (Ala. 1993)). In other words, the gist of a conspiracy claim is the wrong committed. *Anderson v. Allstate Life Ins. Co.*, No. CA 00-958-C, 2001 WL 228057, at *8 (S.D. Ala. Feb. 1, 2001).

The Court is unable to identify an underlying wrong pled against the Agents that would support the existence of a civil conspiracy.

### B. Tort of Bad Faith (Count II)

Bad faith claims can only be brought against parties to an insurance contract. *See Pyun v. Paul Revere Life Ins. Co.*, 768 F. Supp. 2d 1157, 1178 (N.D. Ala. 2011). None of the Agents are parties to the Allstate insurance contract, so the bad faith

---

[4] Southall's Fictitious Defendants claim is addressed above; thus, the individual count does not need to be addressed.

9

count fails as a matter of law against the Agents. *See Aspinwall v. Gowens*, 405 So. 2d 134, 136 (Ala. 1983) (reversed for failure to grant claims adjuster a directed verdict); *Ligon Furniture Co. v. O.M. Hughes*, 551 So. 2d 283, 285 (Ala. 1989) (affirming summary judgment); *Badners v. Prudential Life Ins. Co. of America*, 567 So. 2d 1242, 1244 (Ala. 1990) (affirming summary judgment for insurance agent on breach of contract and bad faith claims because "the record shows no insurance contract between plaintiff and . . . Grant [the agent]." ); *Henson v. Celtic Life Ins. Co.*, 621 So. 2d 1268, 1270 n.2 (Ala. 1993) ("the defendant Jones cannot be held liable for the breach of a contract to which he was not a party; . . . and Jones cannot be held liable on the bad faith count.").

Accordingly, Southall has no possible bad faith claim against the Agents.

C.  Fraud (Count III)

Southall has not asserted a fraud claim against the Agents, only Allstate. *See* Complaint, Doc. 1-2, ¶¶ 34–38, PageID.26-27.

Moreover, the elements of a fraud claim are: (1) a false representation made to the plaintiff, (2) concerning a material, existing fact, (3) upon which the plaintiff reasonably relied, and (4) suffered damage as a proximate consequence of the misrepresentation. *Brickhouse Capital, LLC v. Coastal Cryo, LLC*, --- So. 3d ---, 2023 WL 8658521, *4 (Ala. Dec. 15, 2023) (citation omitted).

The Complaint does not identify any misrepresentation or other fraudulent acts by the Agents or when such was committed. Certainly, the complaint does not meet the requirements of Ala. R. Civ. P. 9(b) that "In alleging fraud . . . , a party must state with particularity the circumstances constituting fraud . . . ." Ala. R. Civ. P. 9(b).

To the contrary, Southall only complains of representations a purported Allstate employee, Nicholas Cook, allegedly made <u>after</u> the fire during the claims adjustment process. Complaint, Doc. 1-2, ¶ 35, PageID.26. However, an alleged misrepresentation in the claim adjustment process is not actionable because of the lack of the element of reasonable reliance. As a matter of law, there can be no reasonable reliance *after* the covered peril has occurred; because "[t]o sustain a fraud action, 'the representee must have been deceived by and relied upon the representation as an inducement of his action or non-action.'" *See Jones v. Ala. Farm Bureau Mut. Cas. Co.*, 507 So. 2d 396, 401–02 (Ala. 1986). There could be no detrimental deception after the fire that caused Southall to purchase the policy seven years before.

D. Breach of Contract (Count IV)

To prove a breach of contract claim, Southall must first establish the existence of a valid contract that is binding on the parties. *Dupree v. PeoplesSouth Bank*, 308 So. 3d 484, 490 (Ala. 2020). The insurance contract was between Allstate and

Southall. The Agents were not parties to that contract. An insured cannot maintain a breach of contract action against an agent because the agent is not a party to that contract, and thus, cannot be liable for breach. *See* cases cited in section II.B., *supra*.

    E.  Combined and Concurring Conduct (Count V)

This count does not state a plausible claim for relief that is cognizable under Alabama law. *See Steel v. Viscofan USA, Inc.*, 2017 WL 253960, at *1, n.2 (M.D. Ala. Jan. 19, 2017) ("The court is not aware of an independent cause of action under Alabama law for combined injury. As a result, the court does not treat this allegation as an independent cause of action . . . ."). Accordingly, this claim does not disturb the jurisdiction of this Court.

    F.  Negligent or wanton procurement (Count VI)

Southall combined two separate causes of action, negligence and wantonness, into one count. To establish a claim for wantonness, a plaintiff must demonstrate that the defendant acted "'with reckless indifference to the consequences, *consciously and intentionally* do some wrongful act or omit some known duty.'" *Thompson v. United Companies Lending Corp.*, 699 So. 2d 169, 175 (Ala. Ct. App. 1997) (quoting *Carter v. Treadway Trucking, Inc.*, 611 So. 2d 1034, 1035 (Ala. 1992) (emphasis added)). During oral argument, Southall's counsel admitted the facts of this case likely could not support a wanton procurement cause of action. The Court concurs in that assessment. The Agents would have to be charged with acting

with reckless indifference to the consequences while consciously and intentionally committing wrongful acts or omitting some known duty. Southall's allegations do not charge wanton conduct. Accordingly, Southall has failed to assert a claim for wanton procurement of the insurance policy against the Agents for which they could possibly be liable.

Negligent procurement may arise where "[o]nce the parties have come to an agreement on the procurement of insurance, the agent or broker must exercise reasonable skill, care, and diligence in effecting coverage." *Highlands Underwriters Ins. Co. v. Elegante Inns, Inc.*, 361 So. 2d 1060, 1065 (Ala. 1978).

To recover for negligent procurement, a plaintiff must demonstrate the classic elements of negligence: (1) duty, (2) breach of duty, (3) proximate cause, and (4) injury. *Crook v. Allstate Indem. Co.*, 314 So. 3d 1188, 1198 (Ala. 2020).

The existence of a duty is a question of law for the Court. *Albert v. Hsu*, 602 So. 2d 895, 897 (Ala. 1992) ("The existence of a legal duty is a question of law for the court; 'where there is no duty, there can be no negligence.'"). The terms of the insurance contract negate any duty owed by the Agents to Southall concerning the replacement cost benefit. Rather, the contract terms governed those benefits. The contract, as renewed, established:

- Replacement cost is for "equivalent construction" of the home that was actually destroyed;

13

- The Important Notices explained that the replacement cost benefit would be based on the actual cost to replace the house up to the policy limits;

- The Important Notices advised "there is a possibility that your new limits may provide coverage" lower or higher than the actual replacement cost of your home;

- The Important Notices advised the replacement limits had been *increased,* which obviously increased the coverage the Agents had originally sold six years earlier on policy inception: "We would like you to know that your policy's PIA recently indicated that construction costs in your area have increased. Based on this information, we have *automatically* increased your Dwelling Protection-Coverage A limits;"

- The Important Notices in the policy renewal continued: "It is important for you to understand that these are only estimates and the new limits of your policy *may not provide sufficient coverage* in the event of a loss."

Therefore, the replacement cost benefit existed as a matter of contract in the renewal between Allstate and Southall in February 2023. Moreover, the limits at the time of the fire were *higher* than when the policy was sold.

The lack of duty is further shown by the rule that once an agent obtains insurance coverage, he does not have a continuing duty to advise, guide, or direct the insured on coverage unless they had a specific agreement to do so. *Somnus Mattress Corp. d/b/a Posturecraft Mattress Co. v. Hilson*, 280 So. 3d 373, 380 (Ala. 2018) (explaining that an agent "does not have a continuing duty to advise, guide, or direct the insured's coverage after the agent has complied with his or her obligation to obtain coverage on behalf of the insured" unless the insured and the agent have a specific agreement to the contrary).

No such agreement has been pled or referred to in the Complaint, the filings, or argument. The Agents were out of the picture when the policy was automatically renewed a few weeks before the fire.

The primary case Southall relies upon is distinguishable. Specifically, in *Pickett v. Am. Bankers Ins. Co.*, No. 2:23-cv-00201-JB-B (S.D. Ala. Oct. 16, 2023), there was a 45-day lapse between the date the plaintiff requested insurance and the insurance agent placed the policy. *Id.* During the 45-day lapse, the plaintiff's prior insurance policy was cancelled, which resulted in her application for insurance (which stated that she had never had an insurance policy be cancelled and the property had never been uninsured) appear to include misinformation. *Id.* The plaintiff's claim was then denied because her new insurance company claimed she committed fraud. *Id.* There, the issue was whether the insurance agent "exercised

15

reasonable skill, care, and diligence in obtaining insurance for [the plaintiff] when more than 45 days lapsed between [the plaintiff's] request for a policy and the placement of the policy and when there is evidence that the previous policy lapsed in between." *Id.* Thus *Pickett,* a case concerning delay in submission of a policy application, is distinguishable.

The Court agrees with Allstate that a case on all fours with the facts of this action has not been found. The logical application of Alabama law to the facts in this case, however, has convinced the undersigned that there is no possibility that Southall can prove a claim of negligent procurement.

G.  Declaratory Judgment (Count VII)

This claim concerns the policy only, and thus, is against Allstate only. Moreover, the equitable remedy of declaratory judgment is moot because Southall has alleged at law claims that will decide the issue of the replacement cost benefit.

## **CONCLUSION**

Here, the Agents have no real connection with the controversy between Allstate and Southall over the amount of the replacement cost benefit. The fire occurred six years after the policy was sold and was annually renewed by Allstate. The dispute did not arise from the initial policy selection but from post-loss claim adjustment over valuation differences at the time of the fire. Accordingly, the Agents were "fraudulently joined" as that term applies, and their citizenship should be

disregarded under diversity jurisdiction. *See Triggs*, 154 F.3d at 1287 (citing *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir. 1983), *superceded by statute on other grounds as stated in Georgetown Manor, Inc. v. Ethan Allen, Inc.*, 991 F.2d 1533 (11th Cir. 1993)). The motion to remand is due to be, and is hereby **DENIED**.

### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this Order shall be served on all parties in the manner provided by law. Any party who objects to this Order or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(a); S.D. ALA. GenL.R. 72(c).

**DONE** and **ORDERED** this 26th day of June, 2024.

/s/WILLIAM E. CASSADY
UNITED STATES MAGISTRATE JUDGE